# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SCOTT INSELMAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-17-915-G |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Scott Inselman brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Upon review of the administrative record (Doc. No. 11, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his DIB application on July 2, 2014, alleging disability beginning May 11, 2011. R. 17, 143-46. Following denial of his application initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on March 11, 2016. R. 40-59, 96-100, 102-04. In addition to Plaintiff, a vocational expert

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

("VE") testified at the hearing. R. 42, 54-57. The ALJ issued an unfavorable decision on April 29, 2016. R. 14-32.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between May 11, 2011, the alleged disability-onset date, and his date last insured of December 31, 2015. R. 19. At step two, the ALJ determined that Plaintiff had the severe impairments of morbid obesity, status post open reduction and internal fixation (ORIF) of the left acetabulum, nonunion fracture of left clavicle, history of right biceps tendon rupture, and chronic obstructive pulmonary disease (COPD). R. 19-20. The ALJ additionally found that Plaintiff's headaches and depression were nonsevere. R. 19-20. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 20-21.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his medically determinable impairments. R. 21-26. The ALJ found that, through the date last insured, Plaintiff had the RFC to perform sedentary work with the additional limitations that

> [Plaintiff] can occasionally lift and/or carry 10 pounds, frequently up to 10 pounds, stand and/or walk at least two hours out of an eight-hour workday, and sit for at least six hours, but he can no more than occasionally climb such thing[s] as stairs or ramps, balance, stoop, kneel, crouch, or crawl, should avoid work above shoulder level, and should avoid concentrated exposure to such things as dust or fumes (work in office-like environment).

R. 21. At step four, the ALJ found that Plaintiff was unable to perform his past relevant work through the date last insured. R. 26.

At step five, the ALJ considered whether there were jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 26-27. Relying upon the VE's testimony regarding the degree of erosion to the unskilled sedentary occupational base caused by Plaintiff's additional limitations, the ALJ concluded that, through the date last insured, Plaintiff could have performed sedentary, unskilled occupations such as clerical mailer or assembler, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 27.

The ALJ therefore determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R 27; *see* 20 C.F.R. § 404.1520(a)(4)(v). Plaintiff's request for review by the SSA Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. R. 1-6; *see* 20 C.F.R. § 404.981.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial

evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

In this action, Plaintiff contends that the ALJ committed reversible error (1) at step three by failing to adequately support his finding that Plaintiff's condition did not meet or equal Listing 1.02, (2) in the RFC assessment by failing to properly weigh medical opinions, and (3) at step five in his finding that, during the relevant period, jobs existed in significant numbers in the national economy that Plaintiff could have performed. *See* Pl.'s Br. (Doc. No. 13) at 5-20. Because remand is warranted based upon the ALJ's failure to properly evaluate the medical opinion of Plaintiff's treating physician, the Court does not reach Plaintiff's additional propositions of error, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

I. THE TREATING-PHYSICIAN RULE

By regulation, a treating source's medical opinion generally is given "more weight"

than that of a nontreating source. 20 C.F.R. § 404.1527(c)(2); *see also id.* § 404.1527(a)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Under Tenth Circuit authority, the evaluation of a treating physician's opinion follows a two-step procedure. *See Watkins*, 350 F.3d at 1300. First, the ALJ must determine whether the treating physician's opinion should be given "controlling weight" on the matter to which it relates. *Id.*; 20 C.F.R. § 404.1527(c)(2). The medical opinion of a treating physician must be given controlling weight if it is both *"*well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *accord Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).[2] Second, if the ALJ has determined that the medical opinion of a treating physician is not entitled to controlling weight, the ALJ must determine what lesser weight should be afforded the opinion. *See Watkins*, 350 F.3d at 1300-01; *Langley*, 373 F.3d at 1119. The determination of how much deference to afford a treating physician opinion not entitled to controlling weight should be made in view of a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

---

[2] Social Security Ruling 96-2p has been rescinded for claims filed on or after March 27, 2017. See Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); *see* 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5).

II. THE MEDICAL RECORD AND THE WRITTEN DECISION

Elizabeth Kinzie, MD, began seeing Plaintiff on May 6, 2013. R. 23, 348, 356, 363-65. In a letter dated January 16, 2014, Dr. Kinzie stated that Plaintiff had "severe degenerative arthritis of the knee and [was] unable to work at [that] time." R. 356. The ALJ criticized this opinion on the basis that opinions on issues reserved to the Commissioner, including whether or not a claimant is disabled, "can never be entitled to controlling weight," and because Plaintiff had not alleged disability based upon a knee impairment. R. 25 (citing 20 C.F.R. § 404.1527(d)(2)). *But see* R. 163 (Plaintiff listing "Pain left knee" in his DIB application as a physical condition limiting his ability to work). Plaintiff does not challenge this aspect of the ALJ's decision.

Dr. Kinzie referred Plaintiff to physical therapy, where Plaintiff was assessed on February 1, 2016, and diagnosed with other intervertebral disc degeneration in the lumbar region, pain in his left hip, and unilateral primary osteoarthritis in his left hip. R. 24, 532-35. On March 6, 2016, Dr. Kinzie completed a medical source statement ("MSS") regarding what Plaintiff was still able to do despite his impairments. R. 537-38. In the MSS, Dr. Kinzie opined that Plaintiff could lift and carry no more than five pounds on an occasional basis and less than five pounds on a frequent basis; that he could stand and walk

6

less than fifteen minutes continuously and less than one hour total, with normal breaks, during an eight-hour workday; that he would not need to lie down or recline at unpredictable intervals during an eight-hour workday; that he could never stoop, kneel, or crouch, but could occasionally balance and climb; that his impairments affected his ability to reach, push and pull; and that he required an assistive device to stand and walk. R. 537-38. Dr. Kinzie left blank the section of the MSS regarding the maximum length of time Plaintiff could sit, with normal breaks, during an eight-hour workday. R. 537.

In reaching his RFC determination, the ALJ summarized Dr. Kinzie's treatment records and described her opinions in both the January 16, 2014 letter and the March 6, 2016 MSS. R. 23-24, 25. After discussing Dr. Kinzie's opinion in the January 16, 2014 letter, the ALJ addressed the weight he afforded Dr. Kinzie's MSS:

> Dr. Kinzie did complete a medical source statement in March 2016. Her statement is quite limited. She indicated that the claimant could not lift/carry over five pounds. However, the doctors all indicated he had full grip strength. She also did not indicate how long the claimant could sit out of an eight-hour workday, but did indicate he could sit for less than two hours at one time. Dr. Kinzie's opinion is given some weight.

R. 25 (citation omitted).

### III. DISCUSSION

Plaintiff objects broadly that the ALJ failed to comply with the treating-physician rule in his consideration of Dr. Kinzie's later opinion. Plaintiff contends that the ALJ should have explained which portions of Dr. Kinzie's MSS were afforded "some weight" and challenges the ALJ's rejection of Dr. Kinzie's finding that Plaintiff was restricted to less than one hour of standing and walking with normal breaks during an eight-hour

7

workday. Pl.'s Br. at 11-12; *see* R. 21, 537-38. Plaintiff states that, though Dr. Kinzie "failed to identify how long Mr. Inselman could sit in an 8-hour work day," "that missing check in the box is unnecessary when reviewing the entirety of the report, because she finds he cannot stand and walk even an hour in an 8-hour workday, and sedentary work requires a minimum of 2 hours." Pl.'s Br. at 12. Plaintiff then adds that there were "other limitations" in the MSS that "would also prevent full-time work." *Id.*

The Court agrees that the ALJ's treatment of Dr. Kinzie's MSS fails to comply with the well-established procedure for the evaluation of treating physicians' opinions.

### A. *The ALJ's Evaluation of the Standing and Walking Restrictions*

At step two of the treating-physician rule, the ALJ provided a single rationale for assigning Dr. Kinzie's opinion only "some weight": the inconsistency between Dr. Kinzie's opinion that Plaintiff "could not lift/carry over five pounds" and medical findings indicating that Plaintiff had "full grip strength." R. 25. While inconsistency of an opinion with the record as a whole can be a valid reason for affording an opinion less weight, *see* 20 C.F.R. § 404.1527(c)(4), the MSS was not limited to Dr. Kinzie's opinion on the lift/carry restriction. The ALJ did not identify any inconsistencies between the record evidence and the other restrictions that were identified by Dr. Kinzie in the MSS but omitted from the RFC. The sole identified inconsistency does not explain rejecting the entire treating-physician opinion and excluding unrelated restrictions from the RFC.

Among these other restrictions identified by Dr. Kinzie were limitations on Plaintiff's abilities to stand and walk. *See* R. 537. As noted, Dr. Kinzie assessed that Plaintiff had (1) a maximum ability to stand and walk continuously (i.e., without a break)

8

of less than fifteen minutes, and (2) a maximum ability to stand and walk with normal breaks of less than one hour during an eight-hour workday. R. 537. Both restrictions conflict with the RFC determination, which broadly finds that Plaintiff can "stand and/or walk at least two hours out of an eight-hour workday" with no restriction on continuous standing/walking. R. 21. In rejecting Dr. Kinzie's findings concerning these limitations, the ALJ was required to provide "specific, legitimate reasons for his decision." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[T]he ALJ . . . must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). The ALJ did not point to "contradictory medical evidence" or identify substantial medical evidence that outweighed Dr. Kinzie's opinion that would properly allow rejection of the sitting restriction. *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("[A]n ALJ . . . may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his own or her own credibility judgments, speculation or lay opinion." (internal quotation marks omitted)).

The Court also notes that the ALJ misstated Dr. Kinzie's opinion that Plaintiff can stand and walk less than one hour during an eight-hour workday, instead incorrectly stating that Dr. Kinzie had determined Plaintiff could "stand/walk for a total of one hour out of an eight-hour workday." *Compare* R. 24, *with* R. 537. There is nothing in the written decision to indicate this was a mere scrivener's error. This inaccurate description of the record

9

bolsters the Court's finding above that the ALJ did not properly evaluate Dr. Kinzie's opinion. *See Alexander v. Barnhart*, 74 F. App'x 23, 26-27 (10th Cir. 2003) (concluding that because the ALJ misstated a physician's opinion, the misstatement could not "stand as substantial evidence of medical improvement" and did not "suffice to meet the Commissioner's requirements for evaluating opinion evidence"); *Molton v. Colvin*, CIV 14-0388 KBM, 2015 WL 13662574, at *4 (D.N.M. June 5, 2015) (holding that because the ALJ misstated findings of a medical source in formulating the claimant's RFC, "his analysis misapprehended the state of the record and the decision [was] not supported by substantial evidence").

For these reasons, the Court cannot "confidently say that no reasonable administrative factfinder, following the correct analysis," could have concluded Plaintiff was incapable of the standing and walking requirements necessary for sedentary work and the representative sedentary jobs identified by the VE and relied upon by the ALJ at step five of the sequential analysis. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (internal quotation marks omitted); *see* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (noting that sedentary jobs require at least occasional walking and standing).

### B. The ALJ's Evaluation of the Sitting Restrictions

The ALJ's handling of Dr. Kinzie's opinion regarding Plaintiff's ability to sit continuously and during an eight-hour workday is also problematic.[3] In his written

---

[3] Though Plaintiff does not make this specific objection, the Court notes this issue "in the hope of forestalling the repetition of avoidable error" on remand. *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012).

decision, the ALJ acknowledged Dr. Kinzie's opinion that Plaintiff's ability to sit continuously (i.e., without a break) was limited to less than two hours and purported to give this opinion "some weight." R. 24, 25; *see* R. 537. Yet, as with the restriction on continuous standing and walking, this restriction was omitted from the RFC. The ALJ provided no explanation for the omission. *See* R. 21 (finding that Plaintiff can "sit for at least six hours"); *see also Daniell v. Astrue*, 384 F. App'x 798, 802 (10th Cir. 2010) ("The ALJ did not identify any contradictory or substantial medical evidence that outweighed the treating physician opinions."). When rejecting a treating-source opinion, an ALJ must articulate "specific, legitimate reasons" for the rejection. *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).

Additionally, the ALJ appears to have relied exclusively on Dr. Kinzie's failure to check a box in her MSS related to Plaintiff's maximum ability to sit with normal breaks during an eight-hour workday as support for his RFC finding that Plaintiff was capable of sitting for "at least six hours." R. 21, 25. The ALJ opined,

> Even though [Plaintiff] is obese and he did injur[e] his hip, these should not prevent him [from] remaining seated most of the day. In the RFC in Exhibit 15F, Dr. Kinzie stated that [Plaintiff] could sit continuously less than two hours, however, she did not say how long he could sit total in an eight-hour workday.

R. 25. Absent from this discussion, and from the written decision as a whole, is any identification of medical evidence as related to Plaintiff's ability to sit at least six hours in a workday. *Cf.* R. 45-46 (Plaintiff claiming he cannot sit for more fifteen to twenty minutes without extreme discomfort and has to lie down ninety percent of the day), 188 (Plaintiff claiming he cannot sit for more than fifteen minutes), 330 (account from Jaquita Snyder,

11

MD, of Plaintiff's complaint of inability to sit more than fifteen minutes), 364 (Dr. Kinzie's treatment notation that prolonged sitting makes Plaintiff's arthritis and back pain worse). The ALJ's failure to provide affirmative support for this RFC finding, while relying instead on Dr. Kinzie's failure to indicate the degree of this limitation, was error. An ALJ must support his or her findings with substantial evidence, and "[t]he absence of evidence is not evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993); *see also Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). By determining that Plaintiff's obesity and hip injury "should not" prevent him from sitting up to six hours in a workday without supporting this contention with evidence in the record, the ALJ improperly "substitute[d] his own medical opinion for that of a disability claimant's treating doctor[]." *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004).

## CONCLUSION

The decision of the Commissioner is reversed and the matter remanded for further proceedings. Judgment shall issue accordingly.

IT IS SO ORDERED this 28th day of September, 2018.

_____
CHARLES B. GOODWIN
United States District Judge